UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ROBINSON,

        Plaintiff,               Case No. 2:13-cv-232

v.                                     Honorable Robert Holmes Bell

CATHERINE BAUMAN, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff James Robinson, a state prisoner currently confined at the Alger Maximum Correctional Facility (LMF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Catherine Bauman, Deputy Warden Daniel Lesatz, Assistant Deputy Warden Scott Sprader, Resident Unit Manager Kathleen E. Nelson, and Assistant Resident Unit Supervisor D. Gerth.

Plaintiff filed both civil rights complaint and a motion for a preliminary injunction (docket ##1-2) alleging that he was involved with a gang in his neighborhood while growing up. However, when he was incarcerated at the Kinross Correctional Facility (KCF) in October 2009, he observed the brutality of the prison branch of that gang and voiced his desire to step away from gang membership. As a result, gang members told Plaintiff that he would no longer be allowed to walk in the general population prison yards. In addition, Plaintiff was assaulted. As a result, Plaintiff requested protection from the Security Classification Committee (SCC), but his request was denied.

Plaintiff was then transferred to the Newberry Correctional Facility (NCF) general population. Plaintiff explained his situation to the SCC at NCF and requested protection, which was denied. In addition, Plaintiff was determined to be unmanageable and his security level was raised from a level II to a level IV. Plaintiff was then transferred to LMF, where he requested protection from Defendant Lesatz. Plaintiff's request was denied. However, Defendant Lesatz explained that LMF had just begun a pilot "reintegration" program which was similar to protection, and that if Plaintiff was in the program, he would have no contact with the general population. Plaintiff agreed and remained in the program for 13 months without any incident. Because of Plaintiff's good behavior, his security level was decreased to level II and he was transferred back to NCF.

Upon arrival at NCF, Plaintiff became aware that a childhood friend was now a high ranking member of the Plaintiff's former gang at NCF.  Plaintiff reached out to this individual, who ordered gang members to leave Plaintiff alone.  This lasted approximately 5 months, until a higher ranking gang member transferred to NCF and overturned the orders of Plaintiff's childhood friend.  Plaintiff's friend warned him of the situation, so Plaintiff again requested protection.  Plaintiff's request was denied.

On May 12, 2011, Plaintiff was transferred to the Chippewa Correctional Facility (URF), where he requested protection.  Plaintiff's request was denied.  Plaintiff was placed in segregation until July 13, 2011, after which Plaintiff was found to be unmanageable and his security level was increased.  Plaintiff was then transferred back to LMF and was placed back in the reintegration program.  On January 11, 2013, Defendant Sprader ordered Plaintiff to return to the general population unit.  Plaintiff requested protection, and his request was denied.  On January 25, 2013, Plaintiff became tired of the repeated denials of his protection requests and agreed to go to the general population unit.  Plaintiff was in the general population unit for approximately one hour before a gang member walked past his cell and told Plaintiff that he should not be in the general population and that "they" were going to stab him.  Plaintiff requested protection from Defendant Sprader, explaining what had happened, but his request was denied.  Plaintiff was then escorted to segregation where he continues to be held as a "serious threat to good order of facility."  Plaintiff filed a grievance regarding this issue, which was denied by Defendants Gerth and Nelson.  Plaintiff appealed the denial to steps II and III, but his appeals were denied by Defendant Bauman and the MDOC Director's Office.

Plaintiff asserts that Defendants' conduct violated his Eighth Amendment rights and seeks injunctive relief.

## Discussion

I.   <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the

prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In support of Plaintiff's motion for a preliminary injunction, Plaintiff attaches a copy of his grievance record on the issue of his requests for protection. In the step I response, Defendant Gerth noted:

> Prisoner was interviewed and his concerns addressed. Since his return to prison for a parole violation on 7/09 prisoner has requested protection or refused to return to his cell no fewer then [sic] seven

>time in an attempt to manipulate placement. He has been transferred for a fresh start four times and has been in the Reintegration Unit twice. On 1/25/13 he again requested protection and once again his claims could not be verified. At that time prisoner was in the Reintegration program and had no contact with any General Population prisoners who he claimed was threatening him. Prisoner has not adjusted since his return to prison and his protection requests are a reflection of his lack of adjustment. Note: Prisoner is safely housed in Administrative Segregation.

*See* Step I Response to LMF 13-02-320-03b, docket #2-3, p. 1 of 4.

>In the step II response, Defendant Bauman stated:

>I have reviewed your Step II Grievance Appeal and all information provided in your Step I Grievance. The response provided at Step I adequately addressed your issue and you have provided no new information to support your claim that you will be caused harm upon release to general population. A review of your institutional file revealed that you have requested protection or refused to return to your cell no less than seven times, that you have been transferred twice for a fresh start, and that you have been in the Reintegration Program twice here at LMF. Due to your lack of adjustment in the prison setting and your repeated requests for protection which are not substantiated, you were placed into administrative segregation. I find that you are appropriately placed and there has been no violation of PD 04.05.112 "Managing Disruptive Prisoners," PD 05.01.130 "Prisoner Security Classification," or PD 05.01.140 "Prisoner Placement And Transfer."

*See* Step II Response to LMF 13-02-320-03b, docket #2-3, p. 4 of 4. Plaintiff's step III appeal was also denied. *See* Step III Response to LMF 13-02-320-03b, docket #2-3, p. 3 of 4.

A review of the record in this case shows that Plaintiff's requests for protective custody were investigated and found to be unsupported. In addition, although Plaintiff was refused protective custody, he was twice placed into the reintegration program where he was segregated from the general population. Moreover, it appears that Plaintiff is currently confined to administrative segregation, where he is also separated from general population inmates. Because the record does

not support a finding that Defendants have been deliberately indifferent to a known risk to Plaintiff's safety, his Eighth Amendment claims are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

In addition, Plaintiff's motions for a preliminary injunction and for appointment of counsel (docket ## 2 and 5) will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: January 8, 2014                         /s/ Robert Holmes Bell
                                               ROBERT HOLMES BELL
                                               UNITED STATES DISTRICT JUDGE